IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

RECEIVED
USDC, CLERK, CHARLESTON, SC

2011 AUG 30  P 3: 59

Charles F. Long,                    )
                                    )
            Plaintiff,              )
                                    )
v.                                  )        Civil Action No. 6:10-539-SB
                                    )
Michael J. Astrue, Commissioner     )        **ORDER**
of the Social Security Administration, )
                                    )
            Defendant.              )
_____)

This is an action brought pursuant to sections 205(g) and 1631(c)(3) of the Social

Security Act, codified at 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the

Commissioner of Social Security's final decision, which denied Plaintiff Charles F. Long's

claim for disability insurance benefits. The record contains the report and recommendation

("R&R") of a United States Magistrate Judge, which was made in accordance with 28

U.S.C. § 636(b)(1)(B) and Local Rule 73.02(B)(2)(a). In the R&R, Magistrate Judge Kevin

F. McDonald recommends that the Court affirm the Commissioner's final decision denying

the Plaintiff's claim. The Plaintiff filed timely objections to the R&R, and the Defendant filed

a response to the Plaintiff's objections. See 28 U.S.C. § 636(b)(1) (providing a party may

object, in writing, to a Magistrate Judge's R&R within fourteen days after being served a

copy). After review, and for the reasons set forth herein, the Court overrules the Plaintiff's

objections and adopts the R&R.

## BACKGROUND

**I.    Procedural History**

The Plaintiff filed an application for disability insurance benefits on March 6, 2008,

alleging disability beginning on January 13, 2008. The Commissioner denied the Plaintiff's application initially and upon reconsideration. The Plaintiff filed a request for a hearing, and on August 6, 2009, an administrative law judge ("ALJ") held a hearing, at which the Plaintiff, his attorney, and a vocational expert appeared. On November 12, 2009, the ALJ issued a decision finding that the Plaintiff was not under a disability as defined in the Social Security Act, as amended. Specifically, the ALJ found:

1.    The claimant meets the insured status requirements of the Social Security Act through June 20, 2013.

2.    The claimant has not engaged in substantial gainful activity since January 13, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*).

3.    The claimant has the following severe impairments: degenerative disc disease in the lumbar and cervical spine (20 CFR 404.1520(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c). Specifically, he can lift and carry 50 pounds occasionally and 25 pounds frequently, sit 6 hours per 8 hour workday, and stand and walk 6 hours per 8 hour workday. However, he could only frequently balance/stoop/kneel/crouch/crawl/climb stairs and ramps, occasionally climb ladders/ropes/scaffolds, and do work not requiring concentrated exposure to noise and/or hazards.

6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565).



7.    The claimant was born on October 15, 1948 and was 59 years old, which is defined as an individual closely approaching advanced age, on the alleged disability date. The claimant subsequently changed age category to advanced age (20 CFR 404.1563).

8.    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

2

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 13, 2008 through the date of this decision (20 CFR 404.1520(g)).

(Tr. at 10-15.)

The Plaintiff filed a timely request for review, which the Appeals Council denied on February 25, 2010, making the ALJ's decision the final decision of the Commissioner. The Plaintiff filed this action on March 5, 2010.

## II.    Medical Evidence

The Plaintiff was 59 years old at the alleged onset date and 61 years old as of the date of the ALJ's decision. He has a high school education and previous work experience as a mechanic's helper.

Prior to the Plaintiff's alleged onset date, he had a mild sloping to severe sensorineural hearing loss bilaterally for which he received hearing aids. Following a motor vehicle accident on January 26, 2007, the Plaintiff was diagnosed with neck, thoracic, and lumbar strain and headache, for which he received narcotic pain and muscle relaxant  medications. A lumbar spine x-ray performed on February 14, 2007, showed no early multilevel degenerative disc disease and very subtle rotatory levoscoliosis. A cervical spine x-ray showed possible early degenerative disc disease at C6-7 with no other abnormalities.

On March 6, 2007, the Plaintiff presented to Dr. M. David Mitchell with complaints of back pain and numbness in his right leg.  Dr. Mitchell diagnosed lumbar back pain, prescribed an anxiolytic (Xanax), and recommended a lumbar spine MRI study, which showed mild spondylosis and foraminal stenoses at L4-L5 and L5-S1 with no focal disc herniation.  On March 13, 2007, Dr. Mitchell noted that the Plaintiff was neurologically intact and willing to return to work, which he "th[ought was] good." (Tr. at 340-41.)  In June 2007, Dr. Mitchell prescribed a narcotic (Lortab) to assist the Plaintiff with pain.  During a follow-up examination on August 22, 2007, Dr. Mitchell saw "no evidence of neurologic compromise" and referred the Plaintiff to a neurologist, Dr. Ernesto Potes.  (Tr. at 333-35.)

On August 29, 2007, the Plaintiff presented to Dr. Potes with complaints of numbness from the waist down.  Upon examination, Dr. Potes found no obvious spinal, head, or limb deformity and observed that the Plaintiff was "fairly muscular and thin" with excellent neck flexion, rotation, and extension without limitation or pain.  Additionally, the Plaintiff had excellent flexion and extension of the lumbar spine and was able to bend at the lumbar spine at an angle to either side without limitation or pain.  The Plaintiff had full strength in all of his extremities, negative straight leg raising tests, and normal reflexes, but he had some tenderness to palpation over the lumbosacral region bilaterally.  Dr. Potes diagnosed the Plaintiff with low back pain with episodic numbness below the waist and recommended EMG nerve conduction studies, which showed that the Plaintiff had right ulnar neuropathy but provided no evidence of peripheral neuropathy or L3-S1 radiculopathy.

On September 19, 2007, Dr. Potes felt that the Plaintiff was "making good stri[d]es forward to return[ing] to work and be[ing] productive," and he remarked that the Plaintiff

4

"has not reached maximum medical improvement at this time." (Tr. at 329.) On September 20, 2007, further testing revealed that the Plaintiff had prolonged cortical potential latency and L1-P37 interval bilaterally with lower limb stimulation, suggesting abnormal conduction in the bilateral lemniscal pathways in the spinal cord.

On October 23, 2007, Dr. Potes found that the Plaintiff had excellent strength upon hip, knee, and ankle flexion/extension. The Plaintiff could stand on his heels and toes, squat fully, and return to a standing position without assistance. The Plaintiff demonstrated normal gait and no reflex loss. Dr. Potes diagnosed low back pain and intermittent numbness and weakness in the legs, and he recommended spinal MRI studies. On October 30, 2007, a cervical spine MRI study showed minimal disc bulging at C6-7; a thoracic spine MRI showed tiny central disc herniation at T6-7; and a lumbar spine MRI showed mild degenerative changes without central canal stenosis and mild left neural foraminal narrowing at L2-L3. The next day, Dr. Potes noted that the EMG nerve conduction study of the lower extremities was unremarkable. He also noted minimal mild ulnar neuropathy on the right lower extremity, minimal multilevel disc bulging in the lumbar spine but without any significant central or neural foraminal stenosis, and very minimal disc bulging at T6-7. Dr. Potes stated that he could not find any evidence of spinal cord abnormality, such as lesions associated to spinal trauma, to explain the Plaintiff's symptoms.

The Plaintiff returned to Dr. Mitchell on January 16, 2008, with complaints of low back and bilateral leg pain. Dr. Mitchell found that the Plaintiff was in no acute distress and was neurologically intact. He remarked that the Plaintiff's activities of employment would be severely limited secondary to his residual back pain and recommended a functional

5

capacity evaluation.

The Plaintiff underwent a functional capacity evaluation at North Grove Physical Therapy on January 28, 2008. The Plaintiff was able to lift at an occasional light work level from the floor to his knuckles. Using either extremity independently, the Plaintiff was able to lift at an occasional sedentary work level, and he was able to lift at an occasional sedentary work level from knuckle to shoulder and from shoulder to overhead. The Plaintiff had reduced range of motion in the lumbar and cervical region and decreased grip strength. He complained of high pain levels in any position while testing, stating his pain was an average of five on a ten-point scale. The Plaintiff's complaints of pain were "magnified" with unusually low lifting, carrying, and general range of motion testing. The Plaintiff's "conversation consisted mostly of how he would be unable to fulfill duties as a diesel mechanic," but the Plaintiff stated that his pain was decreased while seated and using a heating pad. The Plaintiff said that his "legs g[o]t weak" if he was on his feet for more than two hours; that his pain increased with walking; that he could not sit for more than two hours or drive more than ten miles; that he could perform indoor activities of daily living but could not perform yard work; and that he could not carry a crate for more than 125 feet. The Plaintiff climbed stairs sluggishly using railings one step at a time, and even when prompted not to do so, the Plaintiff used a cane. He walked favoring his right lower extremity, and he complained of increased pain when reaching. The Plaintiff had no problem standing but would attempt to sit after five minutes if not prompted to stand.



On February 19, 2008, Dr. Mitchell noted that the Plaintiff had continued back pain with occasional restless leg syndrome. He also noted that the Plaintiff was slow to get up and down and that he used a cane and had an antalgic gait. Due to the Plaintiff's

persistent complaints of back pain, Dr. Mitchell stated that the Plaintiff had reached maximum medical improvement and that he did not think the Plaintiff could return to work as a diesel mechanic. Dr. Mitchell diagnosed the Plaintiff with foraminal stenosis at L4-S1, proscribed Lortab, and assigned the Plaintiff a medical disability of approximately 12 percent based on his motor vehicle accident and neurologic symptoms.

Upon the request of the Commissioner, Dr. W. Russell Rowland examined the Plaintiff on June 10, 2008. The Plaintiff complained of low back pain, hearing loss, and visual problems. He reported that his lumbar pain came and went if he bent over for more than 20 minutes, lifted over 15 pounds, or walked too much. The Plaintiff claimed that he walked daily for ten minutes, which caused low back and extremity pain lasting anywhere from 20 minutes to two hours. Dr. Rowland found that the Plaintiff had a normal station and had a very slow gait and deliberate walk with a cane in the left hand, which he said was used "for balance." However, Dr. Rowland also noted that the Plaintiff did not have a limp nor did he need to use a cane to walk. During the examination, the Plaintiff walked very well at a normal pace with tandem gait, but as he left the examination room, he walked very slowly with a "very deliberate walk" using his cane without a limp.

Dr. Rowland found that the Plaintiff had no edema, deformities, or muscle atrophy in any of his extremities. Dr. Rowland also found that the Plaintiff had normal range of motion in his shoulders, elbows, wrists, thumbs, and fingers; that the Plaintiff had full upper extremity and grip strength bilaterally, full lower extremity strength, squatted 100 percent quickly and rose without assistance; that the Plaintiff had no knee crepitation, tenderness, or joint effusion; and that the Plaintiff displayed normal spinal alignment without muscle spasm or sacroiliac tenderness. The Plaintiff displayed pain over his lumbar spine and

7

paraspinous muscles; however, with distraction, the Plaintiff had no pain with moderately heavy palpation.  The Plaintiff complained of low back pain with cervical axial loading and spinal rotation, but he bent over with ease.  When the Plaintiff stood, he wanted to lean against the examination table.  When asked why, the Plaintiff said that his legs were weak and that he was afraid he would lose his balance.  Dr. Rowland told the Plaintiff that he could stand there without any problem, which the Plaintiff did.  Dr. Rowland noted that he "d[id] not believe [the Plaintiff] ha[d] leg weakness because of the ease with which he did a complete squat."  Also, the Plaintiff had negative straight leg raising tests and normal reflexes along with normal sensation in his upper and lower extremities.

The Plaintiff displayed normal fine dexterity, rapid alternating movements, heel-toe walking, tandem gait, and finger-to-nose testing.  Dr. Rowland diagnosed intermittent chronic low back pain with no objective radiculopathy and positive Waddell's signs.[1]  Dr. Rowland stated that the Plaintiff "exaggerated" during his examination, and he also stated that he did not feel that the Plaintiff was totally disabled and suggested the Plaintiff consider another occupation if using a torque wrench caused too much discomfort.  The same day, a lumbar spine x-ray showed no overall interval change since the previous study, mild multilevel degenerative disc disease, and very subtle rotary levoscoliosis.

On June 23, 2008, Dr. Dale Van Slooten, a State agency physician, reviewed the medical evidence and found that the Plaintiff could perform medium work that did not require more than occasional climbing of ladders, ropes, or scaffolds. He also stated that the Plaintiff should avoid concentrated exposure to noise and hazards.



---

[1] Waddell's signs are a group of physical signs that may indicate a non-organic or psychological basis for low back pain.

8

The Plaintiff was re-examined on July 14, 2008, by another State agency physician, Dr. Carl Anderson, who reviewed the evidence and found that the Plaintiff could perform medium work that did not require more than occasional climbing of ladders, ropes, or scaffolds. He also stated that the Plaintiff should avoid concentrated exposure to noise and hazards.

On July 15, 2008, Dr. Mitchell stated that a functional capacity evaluation performed on the Plaintiff showed that the Plaintiff could only perform work at the "occasional light work level." Dr. Mitchell stated that the Plaintiff had reached maximum medical improvement and had a 12 percent permanent impairment. He further stated that the Plaintiff was unable to return to has past work as a diesel mechanic or any other employment with similar physical demands. The Plaintiff returned to Dr. Mitchell on August 19, 2008, and was prescribed Lortab for his continued low back pain. Upon examination, Dr. Mitchell found that the Plaintiff was under no acute distress but had an antalgic gait and was using a cane.

On July 3, 2009, Dr. Mitchell stated that the Plaintiff had lower extremity weakness, low back pain, impaired function, muscle spasm, and muscle weakness. Dr. Mitchell stated that the Plaintiff was able to sit and stand for one hour each at one time and could sit and stand/walk for less than two hours each in an eight-hour workday; that the Plaintiff was no longer able to climb ladders; and that the Plaintiff could only occasionally lift less than ten pounds, twist, stoop, crouch, squat, and climb stairs. He stated that these restrictions persisted since January 2008.

In a function report dated March 17, 2008, the Plaintiff stated that he tried to perform household tasks such as cleaning, watching television, and cooking simple meals. He

9

stated that he tried to clean his yard, which took three to four days, and he said that he cut the grass and cleaned his house, which took him two hours each day. The Plaintiff stated that he prepared simple food daily, which took him 20 minutes to an hour, and he stated that he had no problems with personal care and that he was able to go outside once or twice a day. The Plaintiff stated that he drove a car, rode in a car, and was able to take short trips of no more than 10 miles. The Plaintiff stated that he was able to go shopping, but that he used an electric cart or wheelchair when doing so. He stated that he had difficulty lifting 20 pounds, squatting, bending, standing, reaching, walking, sitting, kneeling, and climbing stairs. He stated that he used a cane all of the time and wore hearing aids but that he socialized with friends on a daily basis.

## III. Administrative Hearing Testimony

At the hearing, the Plaintiff testified that he filed a claim for unemployment benefits, which he collected during the first and second quarters of 2008. The Plaintiff testified that he stopped working due to difficulties bending, walking, sitting, and lying down caused by an automobile accident in 2007. The Plaintiff testified that he attempted to return to work after the accident but that he had to take too many breaks and too much time off due to his pain. He stated that he had to elevate his legs to alleviate his back pain. Furthermore, he stated that his legs felt numb, as if needles were going through them. The Plaintiff claimed that he experiences leg tingling and weakness five to six times per day with the weakness being greater in the right leg due to a knee cap replacement. The Plaintiff also stated that he experiences low back pain whenever he bends from the waist. The Plaintiff testified that he could sit for one hour before his legs got weak and that he was able to lift ten to 15 pounds. The Plaintiff stated that it took him about two and a half to three hours

10

to clean a sink full of dishes.  The Plaintiff testified that he would vacuum and do laundry each day, and that he would perform daily tasks including going into his garage, petting his dog, and reading magazines.  The Plaintiff testified that he and his wife would drive to Cherokee, stopping about four or five times along the way.  The Plaintiff also stated that he drove two to three times per week and that he went out to eat with his wife.

At the hearing, the ALJ asked a Vocational Expert ("VE"), Mark Leibtrot, to consider the following hypothetical individual of the Plaintiff's age, education, and work experience:

> [A]ssume this hypothetical individual retains the capability of lifting 50 pounds on an occasional basis, 25 pounds on a frequent basis; can stand six of eight hours, walk six of eight hours and sit six of eight hours.  Ropes, ladders and scaffold[s] would be occasional.  Climbing, balancing, stooping, kneeling, crouching and crawling would be frequent.  Noise, avoid concentrated exposure; and hazards, avoid concentrated exposure.

(Tr. at 41.)  The VE testified that such an individual could perform the jobs of drill punch operator (1,800 jobs in the region, 125,000 jobs in the national economy), matchbook assembler (950 jobs in the region, 75,000 in the national economy), and truck washer (1,200 jobs in the region, 100,000 in the national economy).

## STANDARD OF REVIEW

### I.    The Magistrate Judge's R&R

The Magistrate Judge makes only a recommendation to the Court.  The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the Court. <u>Matthews v. Weber</u>, 423 U.S. 261, 269 (1976).  The Court reviews de novo only those portions of the R&R to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the Magistrate Judge's recommendation, or recommit the matter to the Magistrate Judge with instructions.



II.    **Judicial Review of a Final Decision**

The role of the federal judiciary in the administrative scheme as established by the

Social Security Act is a limited one.  Section 205(g) of the Act provides that, "[t]he findings

of the Commissioner of Social Security, as to any fact, if supported by substantial

evidence, shall be conclusive . . . ."  42 U.S.C. § 405(g).  "Consequently, judicial review .

. . of a final decision regarding disability benefits is limited to determining whether the

findings are supported by substantial evidence and whether the correct law was applied."

Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002).  "Substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a
> particular conclusion.  It consists of more than a mere scintilla of evidence
> but may be somewhat less than a preponderance.  If there is evidence to
> justify a refusal to direct a verdict were the case before a jury, then there is
> "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368

F.2d 640, 642 (4th Cir. 1966)).  In assessing whether there is substantial evidence, the

reviewing court should not "undertake to reweigh conflicting evidence, make credibility

determinations, or substitute [its] judgment for that of" the agency.  Mastro v. Apfel, 270

F.3d 171, 176 (4th Cir. 2001) (alteration in original).

**DISCUSSION**

I.    **The Commissioner's Final Decision**

The Commissioner is charged with determining the existence of a disability.  The

Social Security Act, 42 U.S.C. §§ 301-1399, defines "disability" as the "inability to engage

in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. §

423(d)(1)(A).  This determination involves the following five-step inquiry:

> [The first step is] whether the claimant engaged in substantial gainful
> employment.  20 C.F.R. § 404.1520(b).  If not, the analysis continues to
> determine whether, based upon the medical evidence, the claimant has a
> severe impairment.  20 C.F.R. § 404.1520(c).  If the claimed impairment is
> sufficiently severe, the third step considers whether the claimant has an
> impairment that equals or exceeds in severity one or more of the
> impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d);
> 20 C.F.R. Part 404, Subpart P, App. I.  If so, the claimant is disabled.  If not,
> the next inquiry considers if the impairment prevents the claimant from
> returning to past work.  20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a).
> If the answer is in the affirmative, the final consideration looks to whether the
> impairment precludes the claimant from performing other work.

Mastro, 270 F.3d at 177 (citing 20 C.F.R. § 416.920).

If the claimant fails to establish any of the first four steps, review does not proceed

to the next step.  Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993).  The burden of

production and proof remains with the claimant through the fourth step.  However, if the

claimant successfully reaches step five, then the burden shifts to the Commissioner to

provide evidence of a significant number of jobs in the national economy the claimant could

perform, considering the claimant's medical condition, functional limitations, age,

education, and work experience. Walls, 296 F.3d at 290.

Here, the ALJ determined that the Plaintiff had not engaged in substantial gainful

activity since January 13, 2008, the alleged onset date.  At the second step, the ALJ found

that the Plaintiff had the following severe impairment: degenerative disc disease in the

lumbar and cervical spine.  Third, the ALJ found that the Plaintiff does not have an

impairment or combination of impairments that meets or medically equals the criteria listed

in 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.  The ALJ then found the Plaintiff

13

to have to residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 404.1567(c). Specifically, the ALJ found that the Plaintiff: can lift and carry 50 pounds occasionally and 25 pounds frequently; can sit six hours per eight-hour workday; stand and walk six hours per eight-hour workday; can frequently balance, stoop, kneel, crouch, crawl, and climb stairs and ramps; can occasionally climb ladders, ropes, or scaffolds; and cannot perform work requiring concentrated exposure to noise and/or hazards. After finding that the Plaintiff could not perform his past relevant work, the ALJ found that the Plaintiff could perform other jobs that exist in significant numbers.

## II.    The Parties' Briefs

On March 5, 2010, the Plaintiff filed this action seeking judicial review of the Commissioner's final decision. In his complaint and his supporting brief, the Plaintiff alleges that the conclusions and findings of the Commissioner are not supported by substantial evidence and are contrary to law. Specifically, the Plaintiff argues that: (1) the ALJ erred in refusing to assign any weight to the opinion of his treating physician; (2) the ALJ failed to make a proper credibility determination, as required by S.S.R. 97-7p; (3) the ALJ's findings regarding Plaintiff's RFC are not supported by substantial evidence; and (4) he is limited to light work, which requires a finding of disability under Medical Vocational Rule 202.06.

In response, the Commissioner rebuts the Plaintiff's arguments and asserts that the decision denying benefits is supported by substantial evidence.

## III.    The Magistrate Judge's R&R

After reviewing the parties' briefs and the record, the Magistrate Judge issued an

14

R&R, finding that substantial evidence supports the Commissioner's decision denying benefits and recommending that the Court affirm the decision.  With respect to the Plaintiff's first argument–that the ALJ did not give proper weight to the opinion of the Dr. Mitchell, the Plaintiff's treating physician–the Magistrate Judge noted that the ALJ articulated specific reasons for discrediting Dr. Mitchell's opinion and cited persuasive contradictory evidence.  Next, with respect to the Plaintiff's argument that the ALJ failed to properly address his credibility, the Magistrate Judge determined that the Plaintiff's argument amounted to an invitation for the Court to re-weigh the evidence and substitute its credibility determination for the ALJ's, which the Court cannot do.  See Mastro, 270 F.3d at 176 (stating that the court should not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]").  Thus, the Magistrate Judge found that the ALJ had applied the correct legal standards and had properly supported his credibility determination.  With regard to the Plaintiff's next argument–that the ALJ failed to properly evaluate his RFC in finding that the Plaintiff could perform medium work–the Magistrate Judge concluded that ample substantial evidence supports the ALJ's findings and, accordingly, determined that the Plaintiff's allegations of error are without merit.

IV.    **The Plaintiff's Objections and the Commissioner's Response**

In his objections to the R&R, the Plaintiff reasserts the four arguments he raised in his brief, and he again complains that the ALJ's decision is not supported by substantial evidence.  The Plaintiff again argues that the ALJ erred in refusing to assign weight to the opinion of the Plaintiff's treating physician and that the ALJ failed to make a proper

15

credibility determination as well as a proper RFC determination. Finally, the Plaintiff argues that the medical evidence limits the Plaintiff to light work as an absolute maximum, which would result in a finding of disability under Medical-Vocational Rule 202.06.

The Commissioner filed a response to the Plaintiff's objections, noting that the Plaintiff essentially repeats the same arguments raised in his brief and that the Magistrate Judge thoroughly addressed and rejected these arguments in the R&R.

## V.     The Court's Analysis

After careful review, the Court finds that the ALJ's decision is supported by substantial evidence and free from legal error. Accordingly, the Court adopts the R&R and overrules the Plaintiff's objections, as indicated below.

### 1.     Treating Physician

The regulations require consideration of all of the medical opinions in a case together with the rest of the relevant evidence. 20 C.F.R. § 416.927(b). However, a treating physician's opinion on the issue(s) of the nature and severity of an individual's impairment(s) will be given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case." 20 C.F.R. § 404.1527(d)(2). If controlling weight is not accorded, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing



16

20 C.F.R. § 404.1527). The ALJ has the discretion to accord less than controlling weight to a treating physician's opinion in light of "persuasive contrary evidence." Mastro, 270 F.3d at178. Additionally, a physician's conclusory statement that a patient is "disabled" or "unable to work" is not a medical opinion and will be considered only to the extent it is supported by diagnostic evidence. 20 C.F.R. § 404.1527(e)(1). After determining the proper weight to give to a treating physician's opinion, the ALJ must give good reasons for that determination. 20 C.F.R. § 404.1527(d)(2).

Here, the ALJ gave "very little weight" to Dr. Mitchell's opinion, which limited the Plaintiff to significantly less than the full range of sedentary work. (Tr. at 13.) The ALJ then explained in detail his reasons for discounting Dr. Mitchell's opinion and cited persuasive contradictory evidence. First, the ALJ noted that Dr. Mitchell's report dated July 15, 2008, stated that the Plaintiff's MRI confirmed foraminal stenosis; however, the ALJ noted that Dr. Potes, a neurologist, reported that the MRI showed very minimal multilevel disc bulging without any significant central or neural stenosis. The ALJ further noted that Dr. Mitchell's opinion was inconsistent with his functional capacity evaluation, which indicated a capacity for light or sedentary work. The ALJ also noted that Dr. Mitchell's opinion was inconsistent with Dr. Rowland's report that the Plaintiff was malingering, and that it was inconsistent with the Plaintiff's own stated daily activities. Finally, in giving weight to the State agency phsycians over Dr. Mitchell, the ALJ noted that the agency doctors' opinions were consistent with Dr. Potes' reports, Dr. Rowland's reports, and the Plaintiff's testimony.

Here, after consideration of the parties' arguments and the record, the Court agrees with the Magistrate Judge that the ALJ's treatment of Dr. Mitchell's opinion is supported by

17

substantial evidence.  As outlined by the Magistrate Judge in the R&R, the ALJ gave good, detailed reasons for his decision to discount the opinion of Dr. Mitchell, and, indeed, the record indicates that Dr. Mitchell's opinion of disability is not supported by sufficient diagnostic evidence but is instead contradicted by diagnostic evidence.  In the R&R, the Magistrate Judge explained in detail the ample evidence supporting the ALJ's treatment of Dr. Mitchell's opinion, and the Court adopts the Magistrate Judge's findings.  Accordingly, the Court overrules the Plaintiff's first objection.

### 2.    The Plaintiff's Credibility

The Plaintiff next argues that the ALJ failed to properly evaluate his credibility pursuant to Social Security Ruling 96-7p.

> The purpose of [ ] Ruling [96-7p] is to clarify when the evaluation of symptoms, including pain, under 20 CFR 404.1529 and 416.929 requires a finding about the credibility of an individual's statements about pain or other symptom(s) and its functional effects; to explain the factors to be considered in assessing the credibility of the individual's statements about symptoms; and to state the importance of explaining the reasons for the finding about the credibility of the individual's statements in the disability determination or decision.

S.S.R. 96-7p.  Furthermore, as the Magistrate Judge explained:

> [T]he determination of whether a person is disabled by pain or other symptoms is a two-step process.  First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged. . . .  It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated.

Craig v. Chater, 76 F.3d 585, 591-96 (4th Cir. 1996); see also, 20 C.F.R. § 404.1529(b);

18

S.S.R. 96-7p; and 61 Fed. Reg. 34483-01 and 34484-85. A claimant's symptoms, including pain, are considered to diminish a claimant's capacity to work to the extent the alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

To reject a claimant's testimony regarding pain, the ALJ must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence. Hatcher v. Sec'y, Dep't of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989) (quoting Smith v. Schweiker, 719 F.2d 723, 725 n. 2 (4th Cir. 1984)). "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." S.S.R. 96-7p; 61 Fed. Reg. at 34486.

Here, the ALJ first noted that, taken as a whole, the objective medical evidence, including the findings of Drs. Potes, Mitchell, and Rowland, was inconsistent with the degree of symptomology and the limitations alleged by the Plaintiff. The ALJ outlined the medical evidence at length and specifically referred to Dr. Potes' statement that he could not find any evidence of spinal cord abnormality to explain the Plaintiff's symptoms, as well as the doctors' reports indicating symptom magnification and exaggeration on the part of the Plaintiff. The ALJ stated: "the fact that the reports from the FCE and consultative examination indicated symptom magnification/exaggeration and malingering shows that the claimant may not be forthright in his allegations." (Tr. at 13.) See Gonzales v. Barnhart, 465 F.3d 890, 895-96 (8th Cir. 2006) (affirming an ALJ's discrediting of a

claimant's subjective complaints of pain where the evidence indicated that the claimant was exaggerating his symptoms). In addition, the ALJ found that the Plaintiff's testimony regarding his activities of daily living, such as working in the yard and garage, cleaning the house, and socializing with friends, further undermined his credibility. See Johnson, 434 F.3d at 658 (accepting the ALJ's finding that the claimant's activities were inconsistent with her complaints of pain where she attended church, read, watched television, cleaned, washed clothes, visited relatives, fed pets, cooked, managed finances, and performed stretching exercises); Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) ("The only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life"). Finally, the ALJ also considered the Plaintiff's receipt of unemployment benefits and found it to be inconsistent with the Plaintiff's claim of disability.[2] See Jernigan v. Sullivan, 948 F.2d 1070, 1074 (8th Cir. 1991) (noting that an application for unemployment during a claimed period of disability may be "some evidence, though not conclusive" to negate a claim of disability because an application for unemployment benefits requires claimant to admit he is ready, willing, and able to work); Copeland v. Bowen, 861 F.2d 536, 542 (9th Cir. 1988) (stating the same); see also Elder v. Astrue, C.A. No. 3:09-02365-JRM, 2010 WL 3980105, at *10 (D.S.C. October 7, 2010) (noting that the

---

[2]  The Plaintiff objects to the ALJ's consideration of the Plaintiff's acceptance of unemployment benefits and refers to a memorandum issued by the Chief Administrative Law Judge for the Social Security Administration, which indicates that a claimant need not choose between unemployment insurance and Social Security disability benefits.

Here, the Court notes that the ALJ did not discount the Plaintiff's credibility *solely* because of his acceptance of unemployment benefits. Rather, the ALJ considered the Plaintiff's acceptance of unemployment benefits to be some evidence, along with the other factors set forth above, to negate his claim of disability. Under the particular circumstances of this case, the Court finds no legal error with the ALJ's consideration of the Plaintiff's acceptance of unemployment benefits.



ALJ's credibility finding was supported in part by plaintiff's application for unemployment benefits).

After review, the Court agrees with the Magistrate Judge that the Plaintiff's arguments invite the Court to re-weigh the evidence and make its own credibility determinations, which the Court cannot do. Mastro, 270 F.3d at 176 ("In reviewing for substantial evidence, the court should not undertake to re-weight conflicting evidence, make credibility determinations, or substitute its judgment for that of the Secretary.") (quoting Craig, 76 F.3d at 589) (internal quotations and punctuation omitted). Here, the ALJ set forth his clear and specific reasons explaining his findings, and the Court finds that his decision to discredit the Plaintiff's statements is supported by substantial evidence. Accordingly, this objection is denied.

### 3.    The ALJ's RFC Determination

Next, the Plaintiff reiterates his argument that the ALJ failed to properly evaluate his RFC. As the Magistrate Judge noted, an ALJ assesses a claimant's RFC "based on all the relevant medical and other evidence." 20 C.F.R. § 404.1520(a)(4).

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule)[FN7], and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96-8p.



21

Here, the ALJ determined that the Plaintiff had the RFC to perform medium work as defined in 20 C.F.R. 404.1567(c). Specifically, the ALJ determined that the Plaintiff can lift and carry 50 pounds occasionally and 25 pounds frequently; sit six hours per eight-hour workday; and stand and walk six hours per eight-hour workday. However, the ALJ also determined that the Plaintiff could not perform work requiring concentrated exposure to noise and/or hazards, more than frequent balancing, stooping, kneeling, crouching, crawling, climbing of stairs and ramps, or more than occasional climbing of ladders, ropes, or scaffolds. The ALJ outlined the medical evidence supporting his RFC determination in several pages of his decision. For instance, the ALJ noted that the Plaintiff underwent an EMG nerve conduction study of the lower extremities, which was unremarkable with only "mild" or "very minimal" ulnar neuropathy on the right. In addition, the ALJ noted that the Plaintiff was subject to MRI studies, which showed "very minimal" multilevel disc bulging in the lumbar spine without "any significant central or neural foraminal stenosis." (Tr. at 12.) The ALJ also noted that the Plaintiff was able to perform a full squat quickly and rise without assistance; that he had normal spine alignment without muscle spasm or sacroiliac tenderness; and that he exhibited positive Waddell's signs during an examination, which led the doctor to believe that the Plaintiff was exaggerating his symptoms. (Tr. at 13-14.)

The Magistrate Judge reviewed the evidence supporting the ALJ's RFC determination and found that ample substantial evidence supported the ALJ's decision. After a thorough review of the record, the Court agrees with the Magistrate Jude that the ALJ's RFC determination is supported by substantial evidence and is consistent with the law. Although the Plaintiff complains that the ALJ over-assessed his abilities, it is not this Court's job to re-weigh the evidence, and because the Court finds that substantial evidence

22



supports the ALJ's RFC determination, this objection is denied.

### 4.    Medical Vocation Rule 202.06

In the Plaintiff's final objection, he argues that the medical and vocational evidence supports the finding that he is limited to, at most, light work. Assuming this to be true, the Plaintiff contends that Medical Vocational Rule 202.06 requires a finding of disability.[3]

For the reasons set forth above, the Court has already found that substantial evidence supports the ALJ's decision that the Plaintiff was not limited to light work, but rather that he could perform medium work with certain limitations. Therefore, the Court finds this objection to be without merit.

### CONCLUSION

After carefully reviewing the record, the applicable law, and the parties' positions, the Court finds no legal error in the Commissioner's final decision and finds that it is supported by substantial evidence. Therefore, it is hereby

**ORDERED** that the R&R (Entry 12) is adopted and incorporated herein; the Plaintiff's objections (Entry 14) are overruled; and the Commissioner's denial of benefits is affirmed under sentence four of 42 U.S.C. §§ 405(g) and 1383(c).

**AND IT IS SO ORDERED.**

Sol Blatt, Jr.
Senior United States District Judge

August **26**, 2011
Charleston, South Carolina

---

[3] Medical Vocational Rule 202.06 establishes a presumption of disability if a person is between the ages of 55 and 60, has a high school education, engaged in prior work without transferable skills, and is limited to a light level of exertion.



23